UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————X

Richard E. Stone,

                Plaintiff,

        -against-

1. 23rd. Chelsea Associates, LLC; 2. Related
Management Cos.; 3. The Tate Luxury Apt.s.
4. Jerod Wiggins; 5. Adam Gollub.

                Defendants.

—————————————————X

<u>18</u> CV <u>3869</u>

COMPLAINT (Amended)
Jury Trial Demanded

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5 4 18

I - Basis (es) for Jurisdiction

A. Housing Discrimination-

    1. Plaintiff is a 63 year old African-American, Honorably discharged, disabled War

Veteran, who has received a Section 8 voucher from the United States Department of

Housing and Urban Development (HUD) since 2003, and has used such at his present

address, soley and exclusively; such voucher is administered by the local PHA (Public

Housing Authority), in this case the NewYork City Housing Authority (NYCHA); hence,

the controlling law here is Title 24, Code of Federal Regulations (CFR), the governing

laws for HUD, voucher holders and landlords who receive payment through this

voucher.

    2. Plaintiff made a complaint to HUD in March of 2017, alleging disparate

treatment based upon race, a) in that the landlord always ( not superlatively speaking

either) took the side of whites in any dispute where the Plaintiff was involved, even

where Plaintiff was clearly the victim b) also, landlord was found to be charging different

rents based upon race, e.g., blacks were paying more than whites for similar apts., even when they moved in at the same time or later (<u>EXHIBIT A</u>).

     3. Plaintiff signed off on the HUD complaint on April 16, 2017, in-person (<u>EXHIBIT A</u>).

     4. Plaintiff then received a letter from HUD dated May 11, 2017 (<u>EXHIBIT B</u>) stating that they accepted his complaint, on May 10, 2017, advising the following:

a) Since the Respondent landlord receives federal assistance from HUD, the complaint is filed un Title VI of the Civil Rights Act of 1964 (Title VI);

b) As New York State enforces the Fair Housing Law in a substantially equivalent manner as Title VI, the New York State Division of Human Rights (NYSDHR) will handle the complaint along side HUD, pursuant/required by <u>42 U.S.C. 3610 (f)</u>.

c) Additionally, within two years of the of the alleged discriminatory action complained of, one can file a complaint in Federal District Court under <u>42 U.S.C. 3613.</u>

d) Anytime during the 2 (two) year "window," the Plaintiff could go into federal district court and file his case, not disturbing any investigations by the state and federal agencies.            B. Federal Tort Claims Act-

     5. As the HUD complaint involves overcharging the Plaintiff and the Federal government for rent, this Civil War Act would apply.

II Parties

<u>PLAINTIFF</u> - Richard E. Stone - Residing at 535 West 23rd. Street, Apt. 4LS, New York, NY 10011; Phone: 212/929-6093.

<u>DEFENDANT 1</u> - 23rd. Chelsea Associates, LLC (landlord), 535 West 23rd. Street, New York 10011, Management Office, Phone - 212/255-0760.

<u>DEFENDANT 2 -</u>  Related Management Companies (management company), 423 West 55th. Street, 9th. Floor, New York, NY 10019; Phone: 212/492-5298.

<u>DEFENDANT 3 -</u>  The Tate Luxury Apts. - 423 West 55th. St., 9th. Floor, New York, NY 10019; Phone: 212/ 492-5298.

<u>DEFENDANT 4</u> - Jerod Wiggins-  535 West 23rd. Street, Lobby, New York, NY 10011; Phone: 212/255-0760.

<u>DEFENDANT 5</u> - Adam Gollub - 423 West 55th. Street, 9th. Floor, New York 10019; Phone: 212/492-5298.

III - Statement of Claim (s)

<u>Place(s) of Occurrence</u> - 535 West 23rd. Street, New York 10011 ( a residential apartment building.

<u>Date(s) of Occurrence</u> - Since Plaintiff's occupancy - September 1, 2003, March 29 2010, December 16, 2016;  March 17, 20017.

Facts

6. The Plaintiff has resided in the place of occurrence (POO) as a tenant since 2003. But, shortly thereafter, he found that his rent was substantially higher than that of a white, female occupant of a similar apt.  She was paying $511.00 p/m while Plaintiff was paying $845.00 p/m. This is after apt. was advertised earlier for $435.00 in December 1999 (<u>EXHIBIT C-</u>4 pages).

7. Plaintiff thought that NYCHA would pick up the discrepancy and not sign the lease. When they didn't, the Plaintiff just shrugged it off as at that time his 1/3 share was $69.00 per month and the landlord seemed to be a Fair Housing practitioner and adequate operator. Alas, the latter would turnout to not be the case.

8. If there was even a scent of cross words (not cursing) just disagreements, the landlord would always take the side of the white person, even, with video tape supporting the Plaintiff. The first such occurrence was in March 0f 2010 and involved a white, female yelling on her phone directly behind me. Plaintiff got a letter admonishing him.

9. There are many, many such cases, all involving white complainants, and all reports secretly recorded and secreted; none of which the landlord told the Plaintiff about until March 17, 2017 when they used such to try to evict the Plaintiff. Even at that point only making such allegations without dates and names or producing such reports.

10. There were also instances of personnel asking how Plaintiff got in the building, what he was doing in this side of the building and/or monitoring him (EXHIBIT D, 2 pages).

11. Ironically, the Defendant, Jerod Wiggins, an African-American building worker was just as discriminatory, or more, as the management ( Even in October of 2013 taking the side of a white resident who tried to assault the Plaintiff). Since Plaintiff has been there, 15 years, this employee has been very iniquitous; so much so that Plaintiff complained to management, at the time headed by Adam Gollub; but, he never responded (EXHIBIT E, 3 pages). Even though Plaintiff had a long discussion with him when he first came to the building as General Manager around July/August of 2016.

12. These were the basic issues in Plaintiff's complaint to HUD, which was supposed to be addressed by NYSDHR, but they avoided them, puzzlingly, in it's five page finding of "No Probable Cause," dated April 18, 2018 (EXHIBIT F). Puzzling further, is that the NYSDHR report claims that the Plaintiff was given an opportunity to

see the record. This is false (<u>EXHIBIT G).</u>

13. So frustrated by the inability to see his case file, and not having his calls returned, that the Plaintiff asked them to return the case back to HUD, which they didn't do, and issued their deficient report <u>(EXHIBIT H).</u>

As and For 23rd. Chelsea Associates, Related Management, Tate Luxury Apts.

14. Chelsea Associates is the actual owners and they chose Related Management to manage the Tate Luxury Apts.. 23rd. Chelsea is the party that rent checks are sent to; Related Management runs the building thru its personnel, e.g., Jerod Wiggins, Adam Gollub et al. The detailed role of these entities are not fully known as the Plaintiff was denied access to the file by NYSDHR.

Injuries -N/A

Relief Sought

15. Plaintiff would want the Defendants to cease and desist from charging rents in a discriminatory manner and to charge legal rents;  to have complainants make complaints by their own hand ( now, the building personnel makes it, making reports subject to exaggeration or diminution) , on a form, and forwarding such  complaints, in a timely manner, to the subject who is complained of. The complainant need not be identified, depending on the circumstances. Plus and further and other relief that the Court deems to be just and proper.

Plaintiff's Certification and Warnings

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose ( such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a non-frivolous argument to change existing law; (3) the factual contentions have evidentiary support or. if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without pre-payment of fees, each plaintiff must also submit an IFP application.

May 4, 2018
Dated

Plaintiff's Signature

Richard          E.          STone
First Name          Middle Initial          Last name

535 West 23 rd. ST, #4LS
Street Address

New York, NYC          New York   100 11
County, City          State          Zip Code

212 929-6093
Telephone Number          E-mail address (if available)

I have read the Pro Se ( Non-prisoner) Consent to Receive Documents Electronically:

✓ Yes          _____ No

**Complaint**

U.S. Department of Housing
and Urban Development
Office of Fair Housing
and Equal Opportunity

OMB Approval No. 2529-0011

Please type or print this form

Public Reporting Burden for this collection of information is estimated to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

Read this entire form and all the instructions carefully before completing. All questions should be answered. However, if you do not know the answer or if a question is not applicable, leave the question unanswered and fill out as much of the form as you can. Your complaint should be signed and dated. Where more than one individual or organization is filing the same complaint, and all information is the same, each additional individual or organization should complete boxes 1 and 7 of a separate complaint form and attach it to the original form. Complaints may be presented in person or mailed to the HUD State Office covering the State where the complaint arose (see list on back of form), or any local HUD Office, or to the Office of Fair Housing and Equal Opportunity, U.S. Department of HUD, Washington, D.C. 20410.

This section is for HUD use only.

Number: 02-17-7066-8    Check the applicable box:
Filing Date: 5/16/17
☑ Referral & Agency (specify): NYSDHR
☐ Systemic
☐ Military Referral

Jurisdiction: ☐ Yes  ☑ No
☐ Additional Info

Signature of HUD personnel who established Jurisdiction

1. Name of Aggrieved Person or Organization (last name, first name, middle initial) (Mr., Mrs., Miss, Ms.)
STONE, Richard E.
Home Phone: 212/929-6093   Business Phone: Cell # 646-498-3236

Street Address (city, county, State & zip code)
535 West 23rd. ST. (The Tate - nicknamed - "Plan-TATE+ion")

2. Against Whom is this complaint being filed? (last name, first name, middle initial)
23rd. Chelsea Assoc., LLC
Phone Number: 646/604-8674 / 212-255-2200

Street Address (city, county, State & zip code)
535 West 23rd. ST. Management Ofc. N.Y.C., NY 10011

Check the applicable box or boxes which describe(s) the party named above:
☐ Builder  ☑ Owner  ☐ Broker  ☐ Salesperson  ☑ Supt. or Manager  ☐ Bank or Other Lender  ☐ Other

If you named an above who appeared to be acting for a company in this case, check this box ☑ and write the name and address of the company in this space:
Name: Adam Gollub
Address: Related Management - 423 West 55th ST 9th Floor, NY NY 10019 - phone 212-319-1200 - Fax 212/593-5793

Name and identify others (if any) you believe violated the law in this case:
Doorman-Jerrod Wiggins + Manager Adam Gollub.

3. What did the person you are complaining against do? Check all that apply and give the most recent date these act(s) occurred in block No. 6a below.
☐ Refuse to rent, sell, or deal with you
☐ Falsely deny housing was available
☐ Engage in blockbusting?
☐ Discriminate in broker's services
☑ Discriminate in the conditions or terms of sale, rental occupancy, or in services or facilities
☐ Advertise in a discriminatory way
☐ Discriminate in financing
☐ Intimidated, interfered, or coerced you to keep you from the full benefit of the Federal Fair Housing Law
☐ Other (explain)

4. Do you believe that you were discriminated against because of your race, color, religion, sex, handicap, the presence of children under 18, or a pregnant female in the family or your national origin? Check all that apply.
☑ Race or Color
  ☑ Black
  ☐ White
  ☐ Other
☐ Religion (specify)
☐ Sex
  ☐ Male
  ☐ Female
☐ Handicap
  ☐ Physical
  ☐ Mental
☐ Familial Status
  ☐ Presence of children under 18 in the family
  ☐ Pregnant female
☐ National Origin
  ☐ Hispanic
  ☐ Asian or Pacific Islander
  ☐ American Indian or Alaskan Native
  ☐ Other (specify)

5. What kind of house or property was involved?
☐ Single-family house
☐ A house or building for 2, 3, or 4 families
☑ A building for 5 families or more
☐ Other, including vacant land held for residential use (explain)

Did the owner live there?
☐ Yes
☑ No
☐ Unknown

Is the house or property
☐ Being sold?
☑ Being rented?

I am Section 8 renter - 13yrs

What is the address of the house or property? (street, city, county, State & zip code)
535 W. 23rd. ST., NYC, NY 10011

6. Summarize in your own words what happened. Use this space for a brief and concise statement of the facts. Additional details may be submitted on an attachment.
Note: HUD will furnish a copy of the complaint to the person or organization against whom the complaint is made.
They take whites' versions when a fracus occurs + I'm the victim + ignore complaints, monitor you in bldg and say discriminatory things. Go into apt. illegally or try to break in. Charge different rents based on color.

6a. When did the act(s) checked in Item 3 occur? (Include the most recent date if several dates are involved)
From March 2016 to Present - March 17, 2017

7. I declare under penalty of perjury that I have read this complaint (including any attachments) and that it is true and correct.

Signature & Date: Richard E. Stone   APR 16 2017

Previous editions are obsolete

Page 1 of 3

form HUD-903 (7/2001)
ref Handbook 8024.1

06124



**U.S. Department Of Housing and Urban Development**
New York State Office
Jacob K. Javits Federal Building
26 Federal Plaza
New York, New York 10278-0068
http://www.hud.gov/local/nyn/nynopen.html

MAY 1 1 2017

Richard E. Stone
535 West 23rd St., Apt. 4LS
New York, NY 10011

Dear Complainant:

Subject: Housing Discrimination Complaint
         Stone, Richard E. v. 23rd Chelsea Association LLC, et al.
         Inquiry No. 530745
         HUD Case No. 02-17-7066-8
         Title VI Case No. 02-17-0016-6

        On 05/10/2017, the U.S. Department of Housing and Urban Development (HUD) accepted for investigation your complaint of housing discrimination under the Fair Housing Act [42 U.S.C. 3601, et seq.] (the Act). Please retain the attached copy of the complaint for your records. This letter refers only to the complaint listed above. HUD will send you separate notice(s) regarding any other complaints you have filed.

        Since the Respondent named in this complaint is a recipient of federal financial assistance administered by the U.S. Department of Housing & Urban Development (HUD), the complaint is also being filed under Title VI of the Civil Rights Act of 1964 (Title VI). Enclosed is a copy of the complaint and the corresponding statutes. Please retain these documents for your records.

        HUD has determined that the fair housing law enforced by the New York State Division of Human Rights is substantially equivalent to the Act. As such, it has the authority to address discrimination within the area where your complaint arose. Therefore, HUD has referred this portion of your complaint to the New York State Division of Human Rights for investigation as required under the Act [42 U.S.C. 3610(f)]. In addition, HUD will simultaneously investigate the Title VI allegations. In other words, both agencies will work in concert to provide you with a full and impartial investigation under all statutes. Please note that if the New York State Division of Human Rights fails to begin processing your complaint within 30 days, HUD may reactivate that portion of your complaint, and investigate your entire complaint.

During investigation of your complaint, both HUD and the New York State Division of Human Rights will collectively attempt to resolve your complaint informally, through conciliation. If the parties cannot reach an agreement, both agencies will complete their investigations and will issue their decisions on whether there has been a violation of a jurisdictional law.

In addition to filing your complaint with the both agencies, you may also file a civil lawsuit in Federal District Court [42 U.S.C. 3613]. Understand that, if you wish to file such a civil lawsuit, it must be filed no later than two (2) years after the alleged discriminatory housing practice occurred or ended. The time during which either agency handled your complaint does not count towards this two-year limit.

Be aware that it is unlawful to coerce, intimidate, threaten, or interfere with a person because they exercised their rights to file a complaint. Such actions are prohibited under all statutes (Title VIII, and Title VI). If you believe that anyone has taken such action against you because you filed a complaint, please report it to your investigator.

Please keep both agencies informed of your current address and contact information, including your e-mail address. If we are unable to locate you, the processing of your complaint will cease.

If you have any questions, you may contact your investigators at the following addresses:

Michael Peel Acting Director
Housing Investigations Unit
New York State Division of Human Rights
One Fordham Plaza, 4th Fl.
Bronx, NY 10458
Tele: (718) 741-8443

Sincerely,

Jay Golden
Region II Director
Office of Fair Housing
and Equal Opportunity

Enclosures

REBNY ® (1/01)

**RENEWAL LEASE FORM**

Owners and Tenants should read **INSTRUCTIONS TO OWNER** and **INSTRUCTIONS TO TENANT**
on reverse side before filling out or signing this form    *Revised*

THIS NOTICE FOR RENEWAL OF LEASE AND RENEWAL LEASE FORM ISSUED UNDER SECTION 2523.5(a) OF THE
RENT STABILIZATION CODE. ALL COPIES OF THIS FORM MUST BE SIGNED BELOW AND RETURNED TO YOUR
LANDLORD WITHIN 60 DAYS.

Tenant's Name __Nicole Passaro__                    Dated: ___December 1___ 20 _03_

Address __535 West 23rd Street___ __#4G__          Owner's/Agent Name __23rd Chelsea Associates, LLC__
                                    Apt. No.

County __New York, NY__ __10011__                 Mailing Address (No. & Street) __535 West 23rd Street__
                              Zip Code

                                    City, State & Zip Code __New York, NY 10011__

1. The owner hereby notifies you that your lease
   will expire on: __March__ / __31__ / __2004__

═══ PART A - OFFER TO TENANT TO RENEW ═══

2. You may renew this lease, for one or two years, at your option, as follows:

| Column a | Column b | Column c | Column d | Column e | Column f | Column g |
|---|---|---|---|---|---|---|
| Renewal Term | Legal Rent on Sept. 30th Preceding Commencement Date of this Renewal Lease | Authorized Applicable Guideline Increase (if unknown, check box and see below)* ☐ | Applicable Guideline Supplement, if any | Lawful Rent Increase Adj. if any, effective after Sept. 30th indicated in Column b | Separate charge, if any (specify under item 4 below) | New rent (if lower rent is to be charged check box and see item 5 below* ☒ |
| 1 Year | $ 2,200.00 | (_5_%) $ 99.00 | $ | $ | $ | $ 2,299.00 |
| 2 Years | $ 2,200.00 | (7.5%) $ 165.00 | $ | $ | $ | $ 2,365.00 |

\* If applicable guideline rate is unknown at time offer is made check box in column c and enter current guideline which
   will be subject to adjustment when rates are ordered.
\*\* The rent provided for in this renewal lease may be increased or decreased by order of the Division of Housing and
   Community Renewal (DHCR) or the Rent Guidelines Board (RGB).

3. **Security Deposit:**
   Current Deposit: $ ___509.00___        Additional Deposit Required - 1 year lease: $ ___2.00___
                                    Additional Deposit Required - 2 year lease: $ ___2.00___

4. **Specify separate charges if applicable:**
   Air conditioner- Electricity Charge: $ _____ /mo.    421 a(2.2%): $ _____ /mo.
                                    Other: $ _____ /mo.

5. Lower Rent to be charged, if any, $ __511__       Agreement attached:    Yes ☒    No ☐

6. This renewal lease shall commence on ___April 1, 2004___ , which shall not be less than 90 days nor more than
                              month    day    year
   150 days from the date of mailing or personal delivery of this Renewal Lease Form. This Renewal Lease shall
   terminate on ___March 31, 2005___ (1 year lease) or ___March 31, 2006___ (2 Year lease.)
              month    day    year                   month    day    year

7. This renewal lease is based on the same terms and conditions as your expiring lease, except that ___three___ lawful
   provisions attached and ___two___ written agreements between owner and tenant have been added. (Indicate in
   the blank spaces as applicable, the number of additional provisions or written agreements attached).

This form becomes a binding lease renewal when signed by the owner below and returned to the tenant. A rider setting forth the
rights and obligations of tenants and landlords under the Rent Stabilization Law must be attached to this lease when signed by the
owner and returned to the tenant.

═══ PART B - TENANT'S RESPONSE TO OWNER ═══

Tenant: Check and complete where indicated one of two responses below after reading instructions on reverse side. Then date and sign
your response below. You must return this Renewal Lease Form to the owner in person or by regular mail, within 60 days of the date this
Notice was served upon you by the owner. Your failure to do so may be grounds for the commencement of an action by the owner to evict
you from your apartment.

I (we) the undersigned tenant(s), agree to enter into a _____ year renewal lease at a monthly rent of $ _____

This renewal lease is based on the same terms and conditions as my (our) expiring lease, and further attached lawful
provisions and attached written agreements, if any (see item 7 under PART A above).

I (we) will not renew my (our) lease and (we) intend to vacate the apartment on the expiration date of the present lease
indicated above.
Dated: __Feb 27, 04__            Tenant's Signature(s): _N Passaro_

Dated: __3/31/04__               Owner's Signature: _[signature]_

Prepared by:    The Tate    Co.:    Related Management Company    S/N: PCF5-11777
Printed using Software from Professional Computer Forms Co., v. 6/01, 408-947-2107, www.formsplus.com

**RESIDENT** CLA...

REAL E...

## NEWLY CONSTRUCTED APARTMENTS FOR RENT

Chelsea Associates, LLC is pleased to announce that applications are now being accepted for 60 affordable rental apartments now under contruction in the Chelsea section of Manhattan. This building is being constructed through the Mixed Income Rental Program of the New York State Housing Finance Agency. The size, rent, and targeted income distribution of the 60 apartments are as follows:

**50% MEDIAN**

| # APTS AVAILABLE | FAMILY SIZE | APARTMENT TYPE | MONTHLY RENT | TOTAL ANNUAL INCOME RANGE MINIMUM-MAXIMUM |
|---|---|---|---|---|
| 15 | 1 | STUDIO | $435 | $15,819-$18,690 |
| | 1 | 1 BED | $455 | $15,909-$18,690 |
| 26 | 2 | 1 BED | $465 | $18,909-$18,690 |
| | 3 | 2 BED | $559 | $20,327-$24,630 |
| | 4 | 2 BED | $559 | $20,327-$26,700 |

**40% MEDIAN**

| # APTS AVAILABLE | FAMILY SIZE | APARTMENT TYPE | MONTHLY RENT | TOTAL ANNUAL INCOME RANGE MINIMUM-MAXIMUM |
|---|---|---|---|---|
| 3 | 1 | STUDIO | $342 | $12,439-$14,952 |
| 8 | 1 | 1 BED | $365 | $13,273-$14,952 |
| | 2 | 1 BED | $365 | $13,273-$17,088 |
| | 2 | 2 BED | $439 | $15,884-$17,088 |
| 2 | 3 | 2 BED | $439 | $15,964-$19,224 |
| | 4 | 2 BED | $439 | $15,964-$21,360 |

*SUBJECT TO OCCUPANCY CRITERIA   **INCLUDES GAS FOR COOKING
**INCOME REQUIREMENTS SUBJECT TO CHANGE

APPLICANTS WILL BE REQUIRED TO MEET INCOME AND ADDITIONAL SELECTION CRITERIA. To request an application, mail a postcard to: Chelsea Associates, LLC, PMB 227, 101 West 23rd Street, New York, NY 10011. Requests must be received by December 6, 1999." Completed applications must be returned by regular by mail only to a different post office box that will be listed with the application, and must be post marked by December 13, 1999. Applications postmarked after December 13, 1999 will be set aside for possible future consideration. Applications will be selected by lottery.

Since there are only 60 available units, the first 6000 requests will be honored.

Chelsea Associates, LLC PMB 227 101 w. 23rd St. N.Y. NY 10011

YOUR **AD**

CAN BE HERE

JUST CALL

212·679·1850

You should read this Lease and all of its attached parts carefully. If You have any questions or if You do not understand words or statements, get clarification before You and Owner sign this Lease You and Owner will be presumed to have read it and understood it. You and Owner admit that all agreements between You and Owner have been written into this Lease. You understand that any agreements made before or after this Lease was signed and not written into it will not be enforceable.

THIS LEASE is made on _____ September 1, 2003 _____ between
month    day    year

Owner, _____ 23rd Chelsea Associates L.L.C. _____

whose address is _____ 535 West 23rd Street, New York, NY 100 11 _____

and You, the Tenant, _____ Richard Stone _____

whose address is ____ 21-10 Borden Ave. L.I.C., NY 11101 ____

### 1. APARTMENT AND USE

☛ Owner agrees to lease to You Apartment ____ S4I ____ on the ____ S4th ____ floor in the Building at ____ 535 West 23rd Street ____ Borough of ____ Manhattan ____, City and State of New York.
You shall use the Apartment for living purposes only. The Apartment may be occupied by the tenant or tenants named above and by the immediate family of the tenant or tenants and by occupants as defined in and only in accordance with Real Property Law §235-f.

### 2. LENGTH OF LEASE

☛ The term (that means the length) of this Lease is ____ One ____ years, ____ Zero ____ months ____ Zero ____ days, beginning on ____ September 1, 2003 ____ and ending on ____ August 31, 2004 ____. If you do not do everything You agree to do in this Lease, Owner may have the right to end it before the above date. If Owner does not do everything that owner agrees to do in this Lease, You may have the right to end the Lease before ending date.

### 3. RENT

☛ Your monthly rent for the Apartment is $ 2150.00

until adjusted pursuant to Article 4 below. You must pay Owner the rent, in advance, on the first day of each month either at Owner's office or at another place that Owner may inform You of by written notice. You must pay the first month's rent to Owner when You sign this Lease if the lease begins on the first day of the month. If the Lease begins after the first day of the month, You must pay when you sign this lease (I)the part of the rent from the beginning date of this Lease until the last day of the month and (2)the full rent for the next full calendar month. If this Lease is a Renewal Lease, the rent for the first month of this Lease need not be paid until the first day of the month when the renewal term begins.

### 4. RENT ADJUSTMENTS

If this Lease is for a Rent Stabilized apartment, the rent herein shall be adjusted up or down during the Lease term, including retroactively, to conform to the Rent Guidelines. Where Owner, upon application to the State Division of Housing and Community Renewal ("authorized agency") is found to be entitled to an increase in rent or other relief, You and Owner agree: a. to be bound by such determination; b. where the authorized agency has granted an increase in rent, You shall pay such increase in the manner set forth by the authorized agency; c. except that in the event that an order is issued increasing the stabilization rent because of Owner hardship, You may, within (30) days of your receipt of a copy of the order, cancel your lease on sixty (60) days written notice to Owner. During said period You may continue in occupancy at no increase in rent.

### 5. SECURITY DEPOSIT

☛ You are required to give Owner the sum of $ _____ 845.00 when You sign this Lease as a security deposit, which is called in law a trust. Owner will deposit this security in ____ One HSBC Center, Buffalo, NY ____. If the Building ____ HSBC ____ bank at ____ One HSBC Center, Buffalo, NY ____ contains six or more apartments, the bank account will earn interest. If You carry out all of your agreements in this Lease, at the end of each calendar year Owner or the bank will pay to Owner 1% interest on the deposit for administrative costs and to You all other interest earned on the security deposit.
If You carry out all of your agreements in this Lease and if You move out of the Apartment and return it to Owner in the same condition it was in when You first occupied it, except for ordinary wear and tear or damage caused by fire or other casualty, Owner will return to You the full amount of your security deposit and interest to which You are entitled within 60 days after this Lease ends. However, if You do not carry out all your agreements in this Lease, Owner may keep all or part of your security deposit and any interest which has not yet been paid to You necessary to pay Owner for any losses incurred, including missed payments.
If Owner sells or leases the building, Owner will turn over your security, with interest, either to You or to the person buying or leasing (lessee) the building within 5 days after the sale or lease. Owner will then notify You, by registered or certified mail, of the name and address of the person or company to whom the deposit has been turned over. In such case, Owner will have no further responsibility to You for the security deposit. The new owner or lessee will become responsible to You for the security deposit.

### 6. IF YOU ARE UNABLE TO MOVE IN

A situation could arise which might prevent Owner from letting You move into the Apartment on the beginning date set in this Lease. If this happens for reasons beyond Owner's reasonable control, Owner will not be responsible for Your damages

---

☛ Space to be filled in.

Serial No.: PCF5-  Date: 06/07/02

**LEASE VIOLATION REPORT**

Stone                                    S4L
_____        _____
Resident Name                            Apt. No.

South
4th floor hallway                3/22/06   4:30 pm.
_____        _____
Location of Incident                     Date/Time of Incident

Type of Violation (Please Check the Appropriate Item)

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. | Unauthorized Occupant | ___ | 8. | Improper Garbage Disposal | ___ |
| 2. | Pets | ___ | 9. | Unsanitary | ___ |
| 3. | Loud Music | ___ | 10. | Destroying Property* | ___ |
| 4. | Washing Machine | ___ | 11. | Playing in the Hall | ___ |
| 5. | Disturbing Neighbors | ___ | 12. | Loitering | ___ |
| 6. | Possible Drug Violation | ___ | 13. | Locks/Keys | ___ |
| 7. | Noise | ___ | 14. | Other (please explain) | ✓ |

Spraying Grease on bike chain over
hallway carpet.
_____

Who complained or observed the violation? (Use name where possible)

| | | | | | |
|---|---|---|---|---|---|
| 1. | Another Resident | ___ | 4. | RMC Employee | ___ |
| 2. | Guard | ___ | 5. | Vendor | ___ |
| 3. | Courtesy Officer | ___ | 6. | Other (identify) | ___ |

What Happened:

(P) Juan De la Cruz saw observed
resident S4L - Stone spraying
bike grease on chain over carpet.
in hallway.
_____
_____

Action Taken: Lease violation written
_____
_____
_____
_____
_____
_____
_____

Con'd on attached sheet: Y ___ N ___

Related Management Company Employee

Preparing this Report: Sixto Cruz        Date Report Prepared: 3/22/06

Name of Supervisor Notified: _____   Date Notified _____

Were any of the following called or needed? (Check if Yes)

| | | | | |
|---|---|---|---|---|
| Property Manager | ___ | Police | ___ | Ambulance | ___ |
| Superintendent | ___ | Fire Department | ___ | Regional Office | ___ |
| Security Company | ___ | Sanitation Department | ___ | Other | ___ |

*If estimate cost to repair damage exceeds $500 or if anyone was hurt then use the INCIDENT REPORT process

## INCIDENT REPORT

Answer questions 1 through 7 on all incidents.

1.   Site Name __The Tate__          Location Code #: _632_

2.   Building Address (Full)        535 West 23rd Street, New York, New York, 10011

3.   District Manager:   Tatiana Kowalow          Telephone: ████████

     Resident Service Specialist: Jennifer Combs        Telephone: ████████

     Resident Manager:   Patrick Long

4.   Date of Incident      *Courtyard*            Time of Incident   9 30

5.   Type of Incident:

     Property/Building Damage _____     Personal Injury   _____

     Apt. Contents _____     Property of Others _____

6.   Description of Incident(s): *94C (Rich Stone) was seen going from building to building with his bike. 7/17/07 RSS tried to call resident s/m.*

7.   All claims involving burglary, theft, or vandalism must be reported to Police.

     Police Precinct: _____     Case #: _____

     Officer Name: _____     Badge #: _____

     A.   PROPERTY DAMAGE
          Building Damage (describe)

          _____
          _____
          _____
          _____

          Apartment Damage:
          Apartment # _____     Resident Name _____

          Damages: _____
          _____
          _____
          _____

     B.   LIABILITY CLAIM   (Personal Injury or damage to personal property of others)

          Claimant (person making claim) _____

          Address: _____

          Describe what is claimed: _____
          _____
          _____

          Witness (name)_____     Telephone # _____

     Report Completed by: *Emil Estrada*     Date: *7/15/07*

     Reviewed by: _____     Date: _____

Richard E. Stone
535 West 23rd. Street
Apt. 4LS
New York,NY 10011
212/929-6093

To: The Tate Management

Re: Gerard, the Concierge
Date of Occurrence (DOO)- December 16, 2016
Time(s) "        " (TOO) - 18:26 & 20:15 hrs.
Location- Front Desk(23rd. St.) at 535 West 23rd. St.,NYC

At the DOO & TOO, I went to the concierge to apprise him, Gerard, that the elevator to the left was not working- It was stuck on P1.

He told me that he was too busy handling packages. Then in a non sequitur, he threatened me with a mean face while jabbing his index finger at me,saying, you better stop talking about me to residents.

I, at first was taken aback by such a disrespectful and harsh demeanor and was mystified as to what he was referring to. Jogging my memory, I theorized that he was talking about what happened earlier in the week: While I was leaving the exit  door on 23rd. St. I couldn't get out because a resident was blocking the door, in front of which he was smoking.. Finally I did get out, and then mentioned to the resident that this particular concierge always has his eyes glued to the camera screeens( even when you're talking to him-WEIRD); that it's just negligence that he does advise people to not stand there , nor warn people leaving that their exit may be blocked, thus avoiding a confrontation, which gratefully didn't happen this time.

To be sure, I avoid this particular concierge as he lacks good judgment and has an opaque nature, in that you never know if what you've said to him has gotten thru. I say this having dealt with him many  times before.

Past Instances

1. Years ago (check the repair history for my apt.), my toilet cracked and could,t be used,i.e, flushing couldn't be done. This was approx. 3:45 a.m. Gerard was on-duty so I apprised him. He didn't even write an emergency work order, which I found out from his relief, 4 hours later. The relief put in the work order.

2.Then, in April of 2013, another resident went berserk and threatened me saying i almost bumped into his girlfriend, spouting discriminatory statements and  rushing at me and threatening to beat me up. When he saw i wasn't afraid, he backed off. Gerard was off to the side smiling and did nothing. Then, to add insult to injury, he left my package

on the counter ( reason for my heading to the desk) unattended for minutes.

3. Sometime around the same time, I lost my credit card and glasses and someone returned them to the front desk. I only got the items back after seeing something posted on the electronic screen. Why Gerard, who was on-duty, didn't think to call me directly on the phone- You Be the Judge.. I almost cancelled the credit card, thinking that I would never get it back; as well, I was going to arrange to get new glasses. A simple phone call would've done a lot.

Current Case

From 6:27 p.m. to 8:15 p.m.( and maybe after, too), Gerard considered it more important to deal with packages than simply put an "out of order" sign in front of the elevator, thereby saving residents a great inconvenience.

I studiously avoid this concierge, realizing that he has a well documented history of incompetence; now he has shown his other dark side- disrespecting and threatening residents.

Finally, believe it or not, there are other instances regarding this concierge, but, I figured to go with the most serious ones.

To my amazement, I figured this guy was so incompetent that he, by his own hands, would be found out and, perhaps, be put in a job where his capabilities are best applied.

/s/ Richard E. Stone
Dated: December 16, 2016
NY,NY

bcc: 1, 2.

```
           HANOVER
     1 HANOVER ST FL 1
          NEW YORK
             NY
          10005-9992
          3596700070
06/02/2017    (800)275-8777    1:24 PM
```

| Product Description | Sale Qty | Final Price |
|---|---|---|
| First-Class Parcel Service (Domestic) (BRONX, NY 10456) (Weight:0 Lb 11.10 Oz) (Expected Delivery Day) (Monday 06/05/2017) (USPS Tracking #) (9500 1132 8669 7153 0735 67) | 1 | $4.11 |
| First-Class Mail Large Envelope (Domestic) (NEW YORK, NY 10017) (Weight:0 Lb 10.90 Oz) (Expected Delivery Day) (Monday 06/05/2017) | 1 | $3.08 |
| Certified (@@USPS Certified Mail #) (70163560000022294799) | 1 | $3.35 |
| Return Receipt (@@USPS Return Receipt #) (9590940228367069590878) | 1 | $2.75 |

```
Total                         $13.29

Cash                          $20.00
Change                        ($6.71)
```

```
*****************************************
BRIGHTEN SOMEONE'S MAILBOX. Greeting
cards available for purchase at select
Post Offices.
*****************************************

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit USPS.com
```

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®

NEW YORK, NY 10017

| | | |
|---|---|---|
| Certified Mail Fee | $3.35 | |
| Extra Services & Fees (check box, add fee as appropriate) | | |
| ☐ Return Receipt (hardcopy) | $ | |
| ☐ Return Receipt (electronic) | $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $0.00 | Here |
| ☐ Adult Signature Required | $0.00 | |
| ☐ Adult Signature Restricted Delivery | $0.00 | |
| Postage | $3.08 | |
| Total Postage and Fees | $9.18 | |

06/02/2017

7016 3560 0000 2229 4799

Sent To Rosenberg + Estis, P.C.
Street and Apt. No., or PO Box No. 733 Third Ave, NYC
City, State, ZIP+4® N.Y. 10017 - Attn. M. Meisel

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions



**Division of
Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

<table>
<tr><td>

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

RICHARD E. STONE,

Complainant,

v.

23RD CHELSEA ASSOCIATION, L.L.C., THE TATE
LUXURY APARTMENTS, ADAM GOLLUB,
JERROD WIGGINS, RELATED MANAGEMENT
COMPANY, L.P.,

Respondents.

</td><td valign="top">

DETERMINATION AND
ORDER AFTER
INVESTIGATION

Case No.
10188061

</td></tr>
</table>

Federal Charge No. 02-17-7066-8

On 5/10/2017, Richard E. Stone filed a verified complaint with the New York State Division of Human Rights ("Division") charging the above-named respondent with an unlawful discriminatory practice relating to housing because of race/color in violation of N.Y. Exec. Law, art. 15 (Human Rights Law).

After investigation, and following opportunity for review of related information and evidence by the named parties, the Division has determined that there is NO PROBABLE CAUSE to believe that the respondents have engaged in or are engaging in the unlawful discriminatory practice complained of. This determination is based on the following:

The record does not contain sufficient evidence that Complainant was discriminated against by Respondents due to race/color.

Complainant alleged, in this instant matter, that he was discriminated against by Respondents, based on race/color, for various reasons. Complainant alleged that Respondents enter homes unannounced, are sporadically present and ignore complaints. Additionally, Respondents violated NYC Fire codes by blocking the exit to 23rd Street and refusing to place mirrors in elevators, that Respondents do not accept rent payments in cash and that Respondents enter Complainant's apartment for extermination purposes without Complainant asking for those services. Complainant also alleged that Respondent Related Management Company ("RMC")

disobey their own rules of no solicitation by allowing Verizon to solicit. Furthermore, Complainant alleged that Respondents ignore maintenance complaints and that the concierge, Respondent Wiggins, has lost Complainant's packages. Complainant stated that his complaints to Respondents have gone unanswered.

Complainant continued with allegations, stating that it is forbidden to put seasonal decorations on the front doors and forbidden to have a rug outside the door. Complainant also alleged that the electronic notification board for letters malfunctions. Next, Complainant alleged that management, especially Respondent Gollub, are unreliable with office hours to help residents. Complainant stated that a tenant's meeting has never been held in the thirteen years he has lived there. Complainant further alleged that he caught two employees drinking alcohol while working. Furthermore, Complainant stated that Respondent Tate Management did not give the required two-week notice for Section 8 housing inspections.

Finally, Complainant denied that he rides his bike through the lobby, stabbed a resident with a pencil and physically assaulted an employee. Complainant also denied and asserted that all the allegations involve white people aggressing toward Complainant.

Respondents, through their counsel, denied all allegations of discrimination. Respondents stated that Complainant was served a 10 Day Notice to Cure after multiple incidents, the most serious being the Complainant striking a resident in the face with a pencil. This notice was followed by a 7 Day Notice of Termination, dated April 10, 2017, and a Notice of a Holdover Petition, dated April 30, 2017. The holdover was served after Complainant did not vacate his apartment on April 24, 2017. Respondents state Complainant consistently screams at other residents and verbally or physically assaults them. Respondent assert they acted by moving to evict Complainant to protect the safety and well-being of its staff and residents. Respondents stated that Complainant has tried to stall the eviction with the filing of multiple cases to multiple agencies.

Respondents denied that residents of different races and colors are treated differently. Respondents also highlighted that since Complainant lives in a Section 8 affordable housing unit, by law, Complainant's unit is subject to inspection by the Housing Finance Agency. Respondents stated that ample notice was given to Complainant for these inspections.

As a matter, the Division was unable to corroborate Complainant's allegations of race/color discrimination. A review of the evidentiary documents that was submitted by Complainant and Respondent, reveal that Complainant has a history of engaging in altercations, arguments, including physical altercations with tenants and employees of the subject premises. The review also revealed that Complainant started experiencing the alleged harassment in 2010, as evidenced by the filing of a Harassment Case in court. In support of his allegations, Complainant submitted documents to show that he was discriminated against based on his race/color. However, none of the documents including Respondents' documents corroborate Complainant's allegations. Complainant alleged he is not given ample notice for inspections, which are required for Section 8 housing. However, Respondents' documents, in addition to Complainant's documents, indicate that notice was given for inspections, which contradicts Complainant's allegation that he was not given ample notice for inspection due to his race/color.

For example, a notice advising that inspections would take place over "Thursday, December 22nd, Friday, December 23rd, or Monday, December 26th through Friday, December 30th" between the hours of 9AM to 5PM in 2016 was issued to Complainant on December 21, 2016. Complainant alleged that Respondents would not tell what days or times the inspections would be conducted, but evidentiary documents notices appear to contradict Complainant's position.

Furthermore, Respondents and Complainant provided over 50 incident reports from tenants which tend to corroborate Respondents' defense that Complainant appears to be a disturbance in the building. The most serious of which, striking a resident with a pencil. While Complainant denies all the allegations of the incident reports, the reports span from 2006 to 2017 (11 years) suggests a recurring issue of Complainant's threatening/hostile behavior towards other residents.

Contrary to Complainant's allegation that Respondents are trying to evict him due to his race/color, documentary evidence revealed that Respondents have evicted other tenants in the past for reasons that were not related the residents race/color. In February 2012, a tenant, who is Caucasian, was evicted for illegal occupancy and failure to renew, which are in violation of the lease. In 2016, a tenant, who is Asian, was also evicted because that tenant could not show cause and could not present the financials to afford the market rent. Additionally, documentary evidence in the record revealed that NYCHA sent Complainant notices explaining why inspections were necessary for his Section 8 housing, which also contradicts Complainant's position that he was not given sufficient notification for his apartment inspection. Moreover, on March 15, 2018 Respondents submitted to the Division and Complainant acknowledged, that the most recent housing proceeding against Complainant to have him evicted was settled in his favor. Complainant was not evicted and remains a tenant in the subject premises.

Nonetheless, in an effort to corroborate the Complainant's allegations, the Division conducted five (5) telephonic interviews with Respondents residents, but 44 overall calls were made. The first witness self-identified as African American who has lived at the subject premises for 15 years. The second witness self-identified as a white immigrant who has lived in the United States since the 1950's and in the subject premises for 14 years. The third witness self-identified as an African American male who has lived at the subject premises for eight (8) months. The fourth witness self-identified as a Caucasian woman who has lived at the subject premises for 16 years. The fifth witness self-identified as a Spanish woman who has lived at the subject premises for 16 years. None of the witnesses reported having received a "Notices to Cure." Also, none of the witnesses stated that the concierge loses their packages and none of the witnesses spotted employees drinking alcohol while working in the subject premises. Moreover, all the witnesses expressed compliments for the conduct of management and building employees, reported that management notifies residents when they need to enter an apartment and that all repairs are made in a swift manner. None of the residents interviewed, including two Black/African American residents, reported no discrimination. These statements appear to negate Complainant's allegations.

With regards to Complainant's allegations regarding solicitation by Verizon, although three witnesses reported that market rate tenants have certain services that non-market rate residents do not have, three of the non-Black witnesses, who are also non-market rate tenants, are

also affected by the disparity. Moreover, Respondents notified the Division on March 30, 2018, that this matter was resolved. All residents now have access to the resident circle portal where they can access the same services.

The investigation revealed that there were mixed answers from the residents interviewed of whether seasonal decorations can be hung on the resident's door. Some witnesses said "no", and other said "yes". Witness five states she hangs Christmas decorations. But again, even if decorations are or are not allowed, it does not appear that Respondents are discriminating against Complainant due to his race/color. In regards to Complainant's allegation that Respondents does not allow rental payments in cash, Witness three reported that market rate renters can pay with a card, but affordable housing renters must pay by check. However, the investigation did not reveal a nexus of this matter to Complainant's race/color, because three residents that were interviewed who are also non-market rate residents, are not black and are also affected. The investigation revealed that there appears to be a difference of treatment amongst the 80/20 tenants, as market rate residents have special services such as the "Related Circle", or online sources where vendors give deals only to the market rate tenants. However, the Division finds that despite the disparity, it is not due to Complainant's race/color, but due to Complainant's class. However, as noted above, this matter has been recently resolved by Respondents so that non-market residents presently have the same "Related Circle" privileges that market rate residents have.

The comparative data gathered during the Division's investigation does not support Complainant's allegations that he was treated in the manner that was discriminatory due to his race/color.

The investigation revealed that Respondents actions towards Complainant, in moving forward with eviction, was not due to his race/color, but appear to have been due to Complainant's extensive behavioral history, the most serious being of Complainant striking a resident in the face with a pencil, which resulted in Complainant being serviced a 7-day notice of termination on April 10, 2017. *Here we see basic ignorance by Currus-Quillo - "Notice to Cure and 7-Day are after the alleged Conduct*

Based on the foregoing, the investigation failed to uncover sufficient evidence to show that Respondents engaged in unlawful discrimination against Complainant due to his race/color, within the meaning of the Human Rights Law. Respondents actions appear to have been taken against Complainant due to non-discriminatory reasons.

The complaint is therefore ordered dismissed and the file is closed.

PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of Petition and Petition within sixty (60) days after service of this Determination. A copy of this Notice and Petition must also be served on all parties including General Counsel, State Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx, New York 10458. DO NOT FILE THE ORIGINAL NOTICE AND PETITION WITH THE STATE DIVISION OF HUMAN RIGHTS.

Your charge was also filed under the federal Fair Housing Act (FHA). Enforcement of the aforementioned law is the responsibility of the U.S. Department of Housing and Urban Development (HUD). You will be contacted in writing by HUD upon their review of our determination.

Dated:     April 18, 2018
             Bronx, New York

STATE DIVISION OF HUMAN RIGHTS

By:    _____
        Iris Carrasquillo
        Director

Find messages, documents, photos or people

Back          Archive        Move        Delete        Spam

Case# 10188061-Richard Stone v. 23rd. Chelsea                    Yahoo/Sent
Associates et al.

 Richard E. Stone <richarde.stone@yahoo.com>                    Jan 19 at 11:45 AM
To: elizabeth.ortiz-feliciano@dhr.ny.gov

Dear Mrs. Elizabeth Ortiz-Feliciano:

I would like to arrange for an appointment to look at the current file regarding my case. I don't
necessarily need to speak to you while there, if that is not doable.

Or, if the case isn't too paper-laden, perhaps you can mail the case file to me.

Because the building's reception and management of mail and packages is very deficient,
perhaps you can mail such to me at my post box - Richard E. Stone
                  421 Eighth Ave
                  PO Box 7171
                  New York, NY 10116

I'm trying to figure out why this case has taken so long, especially since you said it was
"simple" and the Stipulation was "reasonable." Respectfully, I have to disagree on both these
characterizations, especially since the landlord's lawyer refused to put the clause, "Make whole,"
in the Stipulation, meaning the situation before the process of eviction took place

Finally, is it possible that your agency could return the case back to HUD. Dealing with them
was more fruitful, in that they met you in-person, were available via phone, returned phone calls
and were encouraging.

A lawyer in your field bluntly told me why he believes the case is dragging on. He said they're
waiting for any tribunal to come up with a final decision that they could piggy-back on, whether
that decision was for or against you. My heart stopped when he said that. I sincerely pray that
that isn't the situation.

/s/ Richard E. Stone
535 West 23rd. St., #4LS
New York, NY 10011
Phone: 212/929-6093

Dated: January 19, 2017
        New York, NY



Reply, Reply All or Forward

Find messages, documents, photos or people ⌄                                    Richard E.

Compose          Back              Archive          Move       Delete       Spam

**Case# 10188061-Richard Stone v. 23rd. Chelsea                     Yahoo/Sent
Associates et al.**

 **Richard E. Stone** <richarde.stone@yahoo.com>                    Jan 19 at 11:45 AM
**To:** elizabeth.ortiz-feliciano@dhr.ny.gov

Dear Mrs. Elizabeth Ortiz-Feliciano:

I would like to arrange for an appointment to look at the current file regarding my case. I don't
necessarily need to speak to you while there, if that is not doable.

Or, if the case isn't too paper-laden, perhaps you can mail the case file to me.

Because the building's reception and management of mail and packages is very deficient,
perhaps you can mail such to me at my post box - Richard E. Stone
                              421 Eighth Ave
                              PO Box 7171
                              New York, NY 10116

I'm trying to figure out why this case has taken so long, especially since you said it was
"simple" and the Stipulation was "reasonable." Respectfully, I have to disagree on both these
characterizations, especially since the landlord's lawyer refused to put the clause, "Make whole,"
in the Stipulation, meaning the situation before the process of eviction took place

Finally, is it possible that your agency could return the case back to HUD. Dealing with them
was more fruitful, in that they met you in-person, were available via phone, returned phone calls
and were encouraging.

A lawyer in your field bluntly told me why he believes the case is dragging on. He said they're
waiting for any tribunal to come up with a final decision that they could piggy-back on, whether
that decision was for or against you. My heart stopped when he said that. I sincerely pray that that
isn't the situation.

/s/ Richard E. Stone
535 West 23rd. St., #4LS
New York, NY 10011
Phone: 212/929-6093

Dated: January 19, 2017
New York, NY

                                    ↰   ↞   ➡   •••

Reply, Reply All or Forward

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Regtl Div of Human Right
Gov Fordham Pla 4th Fl
Bronx NY 10458
Attn Guilia Ortiz-Fontaine

9590 9402 3537 7305 1208 68

2. Article Number (Transfer from service label)

7017 3380 0000 0136 5569

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

**USPS TRACKING #**

9590 9402 3537 7305 1208 68

**United States Postal Service**

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Richard E. Stone
535 W. 23rd St., #4LS
N.Y , NY 10011-1121