```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/30/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
RICHARD E. STONE,                                          :
                                                           :
                              Plaintiff,                   :
                                                           :           18-CV-3869 (VSB)
             - against -                                   :
                                                           :           **OPINION & ORDER**
                                                           :
23RD CHELSEA ASSOCIATES, et al.,                           :
                                                           :
                              Defendants.                  :
                                                           :
-----------------------------------------------------------X

Appearances:

Richard E. Stone
New York, NY
*Pro se Plaintiff*

Anthony Patrick Malecki
London Fischer, LLP
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Richard E. Stone brings this action against Defendants 23rd Chelsea Associates, Related Management Companies, the Tate Luxury Apartments, Jerod Wiggins, and Adam Gollub, his landlord and related entities and individuals, asserting claims of racial discrimination under the Fair Housing Act (the "FHA"), 42 U.S.C. §§ 3601–3619; the Civil Rights Act of 1866, 42 U.S.C. §§ 1981–82 ("section 1982"); Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq.*; the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 296, and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8–107.  Before me now is Defendants' motion to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Because

1

Plaintiff's claims are time-barred and/or fail to raise a plausible inference of discrimination, Defendants' motion is GRANTED.

## I.     Background[1]

Plaintiff is a 63-year-old African American disabled veteran.  (Am. Compl. 1 ¶ 1.)[2]  In 2003, he received a Section 8 housing voucher from the United States Department of Housing and Urban Development ("HUD") and moved into unit 4LS of 535 West 23rd Street, New York, NY 10011 ("the Apartment").  (*Id.* at 1 ¶ 1, 3 ¶ 6.)  The building's landlord was Defendant 23rd Chelsea Associates, and was managed by Defendant Related Management Companies, which is in turn headed by Defendant Adam Gollub.  (*Id.* at 1, 2).  Defendant Tate Luxury Apartments "ha[d] offices on [the] premises," and Defendant Jerod Wiggins worked at the Apartment in an unspecified capacity.  (Compl. 5.)[3]

When he first took up residence at the Apartment, Plaintiff alleges, his rent was $845 per month, but "his 1/3 share was $69.00 per month."  (Am. Compl. 3 ¶¶ 6–7.)  However, Plaintiff's initial lease for the Apartment, supplied by Plaintiff, lists the legal rent as $2,150.  (Stone Lease,

---

[1] Unless otherwise noted, the following factual summary is drawn from the allegations of Plaintiff's Complaint and exhibits, filed on April 30, 2018, (Doc. 2), his Amended Complaint and attached exhibits, filed May 4, 2018, (Doc. 3), and his opposition to Defendants' motion to dismiss, filed January 14, 2019, (Doc. 20).  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (On a motion to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference"); *Sommersett v. City of New York*, No. 09 CIV. 5916 LTS KNF, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) ("[W]here a pro se plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations").  I assume Plaintiff's allegations to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiff's Amended Complaint, filed May 4, 2018.  (Doc. 3.)  Because the paragraph numbering in the Amended Complaint is not consistent, and because the exhibits are not clearly marked, I cite to textual allegations using ECF page numbers and paragraph numbers where possible, and I cite to exhibits using the title of the relevant document and the corresponding ECF page numbers.

[3] "Compl." refers to Plaintiff's Complaint, filed on April 30, 2018.  (Doc. 2.)  Citations to the Complaint refer to ECF page numbers.

*id.* at 12.) "Shortly" after moving in, Plaintiff discovered that the "white, female occupant of a similar [apartment]" was paying $511. (*Id.* at 3 ¶ 6; Renewal Lease Form for Nicole Passaro, *id.* at 10.) The legal rent listed on the other occupant's lease was $2,200. (*Id.* at 10.) The apartments had apparently been advertised for $435 per month in December of 1999. (*Id.* 3 ¶ 6.)[4]

Plaintiff contends that during his tenancy, Defendants discriminated against him. (*See generally* Am. Compl.; *see also* Compl. 4.) They said "discriminatory things," ignored his complaints, and asked him "what he [was] doing in a particular part of the building" and "how he got to live in this 'luxury' building." (Am. Compl. 4 ¶ 8; HUD Compl., *id.* at 7; Pl.'s Opp. 1.) He also alleges that they sided with white tenants in tenant-to-tenant disputes. (Am. Compl. 4 ¶ 8, HUD Compl., *id.* at 7.) One such incident occurred in March 2010, when a "white, female" was yelling on her phone directly behind Plaintiff, and Plaintiff received a letter in admonishment. (*Id.*) Plaintiff alleges there were "many, many such cases, all involving white complainants." (*Id.* at 4 ¶ 9.) He learned about these complaints on March 17, 2017, when they were "used . . . to try to evict the Plaintiff." (*Id.*)

Defendant Wiggins was "discriminatory" and "iniquitous" towards Plaintiff, including by taking the side of a white resident who tried to assault the Plaintiff in October 2013. (*Id.* at 4 ¶ 11.) Plaintiff also attaches a letter to his management reporting misconduct by "Gerard, the Concierge"[5]: (1) on December 16, 2016, "Gerard" threatened Plaintiff "with a mean face" and

---

[4] Plaintiff also cites to and includes a copy of the relevant advertisement, but the copy of this document is not legible. (*See* Advertisement, Am. Compl. 11.)

[5] "Gerard" appears to be Defendant Wiggins. In his Amended Complaint, Plaintiff states that Jerod Wiggins "has been very iniquitous; so much so that Plaintiff complained to management, at the time headed by Adam Gollub; but, he never responded (EXHIBIT E, 3 pages)." (Am. Compl. ¶ 11.) As stated above, Plaintiff's exhibits are not labeled, but they do appear to be sequenced in the same order in which they are referenced in the body of the Amended Complaint. Exhibit E corresponds to the December 16, 2016 letter about "Gerard," indicating that he and

said "you better stop talking about me to residents;" (2) several years before that, "Gerard" failed to put in an emergency work order for him; (3) in April 2013, "Gerard" failed to intervene when another resident was threatening him, saying "discriminatory statements" and then left Plaintiff's package unattended for several minutes; and (4) around the same time, "Gerard" did not inform him personally that certain personal effects Plaintiff had lost had been returned to the front desk. (*See* Dec. 16, 2016 Letter, *id.* at 15–16.)

In addition, on several occasions, building personnel asked Plaintiff how he had gotten into the building and what he was doing in a particular area. (*Id.* 4 ¶ 10.) They also "monitor[ed] him." (*Id.*) As an example of this, Plaintiff includes incident reports stating that Plaintiff was observed "spraying bike grease on chain over carpet in hallway," (Mar. 22, 2006 Lease Violation Report, *id.* at 13), and that Plaintiff "was seen going from building to building with his bike," (July 15, 2007 Incident Report, *id.* at 14.)

Plaintiff "made" an online housing discrimination complaint with HUD in March 2017, and signed and submitted it on April 16, 2017. (*Id.* at 1 ¶ 2–3; HUD Complaint, *id.* at 7.)[6] In the HUD complaint, Plaintiff alleged discriminatory treatment by the landlord, Related Management, Adam Gollub, and Jerrod Wiggins. (*Id.*) HUD responded that it would investigate his claims under the Fair Housing Act and Title VI of the Civil Rights Act of 1964. (May 11, 2017 HUD Letter, *id.* at 8.) HUD also determined that New York's fair housing law is substantially equivalent to the Fair Housing Act and referred the complaint to the New York State Division of Human Rights ("NYSDHR") for simultaneous investigation. (*Id.*) On June 6, 2017, Plaintiff made a complaint directly to NYSDHR. (Compl. 8.) On April 16, 2018,

---

Jerod Wiggins are the same person. In addition, Defendants themselves refer to Wiggins as a "concierge agent" or "doorman." (*See* Defs.' Mem. 5.)

[6] It is unclear what Plaintiff means when he says that he "made" the complaint in March 2017.

NYSDHR issued a determination that there was no probable cause to believe that Defendants had violated the relevant provision of New York Law, N.Y. Exec. Law. Art. 15. (*Id.* at 4 ¶ 12; NYSDHR Determination and Order After Investigation, *id.* at 18–22.) Plaintiff has not provided information as to the outcome of the HUD Title VI investigation.

## II.   **Procedural History**

Plaintiff filed his pro se Complaint on April 30, 2018, (Doc. 2), along with a request to proceed in forma pauperis ("IFP"), (Doc. 1).[7] On May 4, 2018, he filed an Amended Complaint. (Doc. 3.) On October 2, 2018, Plaintiff's IFP application was granted, (Doc. 5), and on October 10, 2018, I issued an Order of Service instructing the Clerk of Court to deliver the documents necessary to effect service on defendants to the U.S. Marshals Service, (Doc. 7.)

Defendants, who are represented by the same counsel, filed a motion to dismiss the Complaint and supporting memorandum of law on December 17, 2018. (Doc. 16.) On December 18, 2018, I issued an Order directing Plaintiff to file an amended complaint by January 7, 2019, or to file opposition to Defendants' motion to dismiss by January 21, 2019. (Doc. 19.) Plaintiff filed his opposition to Defendants' motion to dismiss on January 14, 2019. (Doc. 20.) Defendants submitted their reply on January 16, 2019. (Doc. 22.)

---

[7] Plaintiff has also filed at least three actions in this Court, which were dismissed for lack of subject matter jurisdiction. *See Stone v. NYDHR*, No. 18-CV-3867 (CM); *Stone v. NYC Landlord & Ten. Ct.*, No. 17-CV-6968 (CM); *Stone v. Alezy*, No. 12-CV-3522 (LAP). In dismissing the most recent of these, *Stone v. NYDHR*, which was filed after the instant case, Chief United States District Judge of the Southern District of New York Colleen McMahon concluded that "Plaintiff was or should have been aware of the scope of the federal courts' subject matter jurisdiction when he filed [that] action." *See* No. 18-CV-3867, ECF No. 5, at 3 (June 28, 2018). Accordingly, she warned Plaintiff that "further frivolous litigation in this Court will result in an order barring him from filing new actions *in forma pauperis* without prior permission." *Id.* A brief search of ECF suggests that Plaintiff has not filed any new lawsuits in this court since that order was issued.

### III. Legal Standards

#### A. *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

On a motion to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."[8] *Chambers*, 282 F.3d at 152.

---

[8] I note that in support of their Motion to Dismiss, Defendants describe facts not asserted in Plaintiff's submissions,

B. *Pro Se Litigant*

Even after *Twombly* and *Iqbal,* a "document filed *pro se* is to be liberally construed and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Bennett v. City of New York,* 425 F. App'x 79, 80 (2d Cir. 2011) (summary order) (quoting *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008)).  Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Kevilly v. New York,* 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (internal quotation marks omitted).  Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations.  *See Walker v. Schult*, 717 F.3d 119, 124, 130 (2d Cir. 2013).  In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).  However, "where a pro se plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations." *Sommersett v. City of New York*, No. 09 CIV. 5916 LTS KNF, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011).

IV. **Discussion**

Plaintiff contends that Defendants have discriminated against him by charging him a higher rent based on his skin color, siding with white tenants, ignoring his complaints, monitoring him, entering his apartment illegally, and saying discriminatory things.  (Am Compl.

---

such as allegations concerning the circumstances of Plaintiff's alleged eviction, (Defs.' Mem. 5), which I may not and do not consider in resolving the instant motion.  *See Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.,*155 F.3d 59, 67 (2d Cir. 1998) (on a motion to dismiss, court "is limited to facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken.")  "Defs.' Mem." refers to Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss Complaint Pursuant to Fed. R. Civ. Proc. § 12(b)(6), filed on December 17, 2018.  (Doc. 15, at 3–18.)

2–5; HUD Compl.*,* Am. Compl. at 7.)  He purports to bring his claims of discrimination under the "Fair Housing Act," "Title VI," "42 U.S.C. Section 200d, Section 1981," and the Federal Tort Claims Act.  (*See* Compl. 4; Am. Compl. 2; Pl.'s Opp. 3–4.)  Plaintiff seeks "a monetary penalty," (Compl. 5), as well as injunctive relief in the form of a court order requiring (1) that Defendants "cease and desist from charging rents in a discriminatory manner and to charge legal rents;" (2) that complainants be required to make complaints by their own hand, and (3) "further and other relief that the Court deems to be just and proper," (Am. Compl. 5).

Because Plaintiff is proceeding pro se, I liberally construe his pleadings as advancing claims under the following laws:  the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680; the FHA, 42 U.S.C. §§ 3601–3619; the Civil Rights Act of 1866, 42 U.S.C. §§ 1981–82; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*; the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 296; and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8–107.  I consider each of the claims in turn below.

### A.     *Federal Tort Claims Act*

As an initial mater, the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, "provides jurisdiction in the federal courts and waives the sovereign immunity of the United States for "claims against the United States for money damages . . . for . . . injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *under circumstances where the United States, if a private person, would be liable to the claimant* in accordance with the law of the place where the act or omission occurred."  *Liranzo v. United States*, 690 F.3d 78, 85 (2d Cir. 2012) (quoting 28 U.S.C. §§ 1346(b)(1)).

It "was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Richards v. United States*, 369 U.S. 1, 6, 82 S. Ct. 585, 589, 7 L. Ed. 2d 492 (1962). It is simply inapplicable to a suit against private entities and individuals. *See Wideman v. Watson*, No. 14-CV-02488-BNB, 2014 WL 5573451, at *3 (D. Colo. Oct. 31, 2014) (finding that plaintiff could not assert a claim against his doctor because "the FTCA provides a cause of action against only the United States, and not against private individuals"), *aff'd,* 617 F. App'x 891 (10th Cir. 2015). Therefore, I find this claim frivolous and appropriate for dismissal *sua sponte*, pursuant to my authority to do so with regard to actions brought in forma pauperis. *See* 28 U.S.C. § 1915(2)(B(i).

### B.  *Housing Discrimination*

Defendants move to dismiss all of Plaintiff's discrimination claims on the grounds that (1) they were filed outside the applicable statutes of limitations and are untimely and (2) that he has failed to allege sufficient facts to state a claim of discrimination against any Defendant. (Defs.' Mem. 8–13.) Defendants also move to dismiss Plaintiff's claims against the individual defendants specifically on the grounds that (1) Title VI does not provide for individual liability, (*id.* at 13–14), and (2) the individual defendants are not alleged to have the right to direct or control the sale or rental of housing, precluding liability under the FHA, (*id.* at 14–15).

#### 1. Applicable Law

##### a.  The Fair Housing Act

The FHA, enacted as Title VIII of the Civil Rights Act of 1968, "imposes liability on private actors who discriminate against protected class members in the real estate market." *Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 584 (S.D.N.Y. 2012). Broadly, the Act's

9

provisions are designed "to eliminate all traces of discrimination within the housing field." *Cabrera v. Jakabovitz*, 24 F.3d 372, 390 (2d Cir. 1994) (quotation marks omitted).

Under section 3604(b) of the FHA, it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The Second Circuit has held that Section 3604(b) prohibits not just discrimination in connection with the initial rental or sale of a dwelling, but also conduct that "would constitute discrimination in the enjoyment of residence in a dwelling or in the provision of services associated with that dwelling after acquisition." *Francis v. Kings Park Manor, Inc.*, 944 F.3d 370, 377 (2d Cir. 2019) (internal quotation marks omitted). Prohibited post-acquisition conduct includes a discriminatory treatment as well a landlord's failure to take reasonable steps within its control to remedy a hostile housing environment of which it is aware. *Id.* Section 3617 of the FHA makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section . . . 3604." 42 U.S.C. § 3617.

FHA disparate treatment claims are analyzed under the familiar *McDonnell Douglas* burden-shifting framework used to evaluate Title VII employment discrimination claims. *Haber*, 847 F. Supp. 2d at 585 (citing *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003). At the pleading stage, an FHA plaintiff must "allege facts that support a plausible claim that the plaintiff was a member of a protected class, suffered relevant adverse treatment, and can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (internal quotation marks omitted); *L.C. v.*

10

*LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 400 (S.D.N.Y.2013) ("[F]or disparate treatment cases, '[t]o establish a prima facie case of discrimination under the FHA [ ], the plaintiffs must present evidence that animus against the protected group was *a* significant factor' in the position taken by the defendant." (second and third alterations in original) (quoting *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 49 (2d Cir. 2002)).

A claim under the Fair Housing Act must be brought within two years "after the occurrence or the termination of an alleged discriminatory housing practice."  42 U.S.C. § 3613(a)(1)(a).  "Under federal law, a cause of action generally accrues 'when the plaintiff knows or has reason to know of the injury that is the basis of the action.'" *Nat'l R.R. Passenger Corp. v. McDonald*, 779 F.3d 97, 101 (2d Cir. 2015) (internal quotation marks omitted).  "In analyzing the timing of [when a claim accrues] in the context of discrimination claims, the Supreme Court has instructed that 'the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful.'" *Bd. of Educ.v. C.M. on behalf of P.G.*, 744 F. App'x 7, 9 (2d Cir. 2018) (quoting *Morse v. Univ. of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992)).

The limitations period is tolled during the pendency of an administrative proceeding before HUD.  *See Boykin v. KeyCorp*, 521 F.3d 202, 211 (2d Cir. 2008).

The time to file suit may also be tolled by the continuing violation doctrine, which applies "when a plaintiff challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period." *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 291–92 (S.D.N.Y. 2011) (internal quotation marks omitted).  Where it is applicable, "the doctrine delays 'the commencement of the statute of limitations period . . . until the last discriminatory act in furtherance of' the alleged discriminatory policy." *Id.* at 292

11

(quoting *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009).  However, such tolling is "is disfavored in this Circuit, and will be applied only upon a showing of compelling circumstances." *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 279 (S.D.N.Y. 2019) (internal quotation marks omitted).

### b.  Section 1982, NYSHRL, and NYCHRL.

"Section 1982, NYSHRL, and NYCHRL housing discrimination claims are analyzed under the same standard as claims made under the FHA." *Haber*, 847 F. Supp. 2d at 588 (citing *Fair Hous. Justice Ctr., Inc. v. Broadway Crescent Realty, Inc.*, No. 10 Civ. 34, 2011 WL 856095, at *9 (S.D.N.Y. Mar. 9, 2011)); *Mitchell v. Century 21 Rustic Realty*, 233 F. Supp. 2d 418, 437 (E.D.N.Y. 2002)); *see also D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 366 (S.D.N.Y. 2017) (analyzing FHA, NYSHRL, and NYCHRL claims together because "liability under the state and New York City statutes, in pertinent part, tracks liability under the FHA").

The statute of limitations for a NYSHRL claim is "three years from the date that the claim accrues."[9]  *Allen v. New York City Dep't of Envtl. Prot.*, 51 F. Supp. 3d 504, 511 (S.D.N.Y. 2014); N.Y. C.P.L.R. § 214(2).  Similarly, the statute of limitations for a NYCHRL claim is "three years after the alleged unlawful discriminatory practice . . . occurred."  N.Y.C. Admin. Code § 8–502(d).

Like the FHA, the limitations period under both laws is tolled by the pendency of an administrative proceeding and by the continuing violation doctrine.  *Tejada v. LittleCity Realty*

---

[9] Although no court has yet opined on when a claim "accrues" under the NYSHRL in the housing discrimination context, many have held that "an employment discrimination claim accrues on the date than an adverse employment determination is made and communicated to the plaintiff." *Milani v. Int'l Bus. Machines Corp.*, 322 F. Supp. 2d 434, 453 (S.D.N.Y. 2004), *aff'd sub nom. Milani v. Int'l Bus. Machines Corp.*, 137 F. App'x 430 (2d Cir. 2005). This suggests that the proper focal point of accrual under New York law is the discriminatory conduct itself.

*LLC*, 308 F. Supp. 3d 724, 731 (E.D.N.Y. 2018) (applying continuing violation doctrine to the NYCHRL); *Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 527 (S.D.N.Y. 2002), *aff'd*, 76 Fed. App'x. 366 (2d Cir. 2003) (applying continuing violation doctrine to the NYSHRL); *Blake v. Bronx Lebanon Hospt. Ctr.*, No. 02 Civ. 3827 (CBM), 2003 WL 21910867, at *6 (S.D.N.Y. Aug. 11, 2003) (applying continuing violation doctrine to both the NYCHRL and NYSHRL).

          c.  Title VI

"Title VI provides that '[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'" *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 531 (S.D.N.Y. 2013) (quoting 42 U.S.C. § 2000d).  "To state a claim under Title VI, a plaintiff must allege . . . (1) that the defendant discriminated against him on the basis of race; (2) that that discrimination was intentional; and (3) that discrimination was a substantial and motivating factor for the defendant's actions.  *Id.* (citing *Tolbert v. Queens Coll.,* 242 F.3d 58, 69 (2d Cir. 2001).  Title VI claims are also governed by the *McDonnell Douglas* framework.  *See Koumantaros v. City Univ. of New York*, No. 03 CIV10170GEL, 2007 WL 840115, at *7 & n.10 (S.D.N.Y. Mar. 19, 2007) (collecting cases).  State law supplies the relevant limitations period, which as stated above is three years in New York.  *See Singh v. Wells*, 445 F. App'x 373, 376 (2d Cir. 2011).  Federal law determines when the claim accrues.  *See id.*  Accordingly, the federal principles of accrual discussed earlier in the context of the Fair Housing Act, apply equally to the accrual of a claim under Title VI.

    Because Title VI, unlike Title VII, does not require a plaintiff to exhaust his administrative remedies, the limitations period is not tolled by the pursuit of such remedies.

*Williams v. City Univ. of New York*, No. 13 CV 1055 CBA LB, 2014 WL 4207112, at *7 (E.D.N.Y. Feb. 7, 2014), *report and recommendation adopted*, No. 13-CV-1055, 2014 WL 4207115 (E.D.N.Y. Aug. 25, 2014), amended, No. 13-CV-1055 CBA LB, 2014 WL 4384677 (E.D.N.Y. Sept. 3, 2014), *aff'd*, 633 F. App'x 541 (2d Cir. 2015); *cf. Bryan v. Koch*, 627 F.2d 612, 620 (2d Cir. 1980) ("The Title VI plaintiff . . . need not await an administrative inquiry, and he should not be entitled to secure a delay simply because an administrative inquiry has not been completed.").

The Second Circuit has not addressed whether the continuing violation doctrine applies to Title VI claims, but district courts in this Circuit have remarked that such applicability is "questionable." *Martin v. State Univ. of New York*, 704 F. Supp. 2d 202, 234 (E.D.N.Y. 2010). Unlike Title VII and Title VIII, which are broad prohibitions that apply to employers and landlords, respectively, that aim to compensate victims of discrimination, Title VI is essentially "contractual in nature," and so "a drastic expansion of its limitations period might exceed the goals of the statute." *Cf. id.* 234–35; *see also Rafi v. Yale Univ. Sch. of Med.*, No. 3:14-CV-01582 (VAB), 2017 WL 3205548, at *10 (D. Conn. July 27, 2017).

### 2. Application

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 425 (2d Cir. 2008)).

Plaintiff filed his complaint on April 30, 2018. Thus, crediting Plaintiff's allegation that he "made a complaint to HUD in March of 2017," (Am. Compl. 1 ¶ 2), and that NYSDHR's

14

decision on his federal and state claims was issued on April 16, 2018, (*id.* 4 ¶ 12; *id.* Ex. F), the limitations period for Plaintiff's FHA claim runs from March 12, 2015 at the latest. The limitations period for his NYSHRL, and NYCHRL claims would have begun at the latest on March 1, 2014. And the limitations period for his Title VI claim would have begun at the latest on April 30, 2015.

Reviewing the allegations in Plaintiff's submissions, the sole conduct alleged to have occurred within any of these limitations periods is that on December 16, 2016, "Gerard" threatened Plaintiff "with a mean face" and said "you better stop talking about me to residents," (Dec. 16, 2016 Letter, Am. Compl. 15–16), and on March 17, 2017, Defendants "used" the complaints of white tenants to "try to evict" Plaintiff, (*id.* 4 ¶ 9). These vague allegations at best suggest that Defendants harbored an antipathy towards Plaintiff, but fall far short of raising an inference that they acted with "discriminatory animus" based on his membership in a protected class. *Smith v. NYCHA*, No. 08–CV–4717, 2009 WL 2486930, *aff'd*, 410 F. App'x 404, 406 (2d Cir. 2011) ("Because [plaintiff] has not alleged that discriminatory animus was a factor, much less a 'significant factor,' in [defendant's] alleged failure to maintain the apartment building and [plaintiff's] apartment, she failed to state a claim for intentional discrimination."); *see also Kitchen v. Phipps Houses Grp. of Companies*, 380 F. App'x 99, 100 (2d Cir. 2010) ("Although [plaintiff] alleges various health and maintenance problems at his former apartment and dissatisfaction with landlord-tenant proceedings, he fails to assert any facts that plausibly link these circumstances to his race or disability"); *Lawtone-Bowles v. New York City Hous. Auth.*, No. 13 Civ. 1434 (GBD)(JCF), 2014 WL 705272, at *2 (S.D.N.Y. Feb. 20, 2014) (finding that plaintiff "fail[ed] to provide any factual allegations raising an inference of discriminatory treatment and therefore fails to 'raise a right to relief above the speculative level'" (quoting

*Twombly*, 550 U.S. at 555)).

Because Plaintiff has not alleged any unlawful act that occurred during the limitations period, the continuing violations doctrine cannot apply and I need not consider his allegations dating back beyond the relevant limitations periods. According, Defendants' motion to dismiss based on the fact that the alleged conduct is outside the relevant statutes of limitations is granted.

However, to the extent that Plaintiff might seek to advance the theory that although his timely allegations may not make out claims on their own, they make up part of an ongoing unlawful policy of discrimination when considered in conjunction with his untimely allegations, these claims also fail. *See Favourite*, 381 F. Supp. 278–79. For example, Plaintiff alleges that in 2003, the rent of a "white, female" tenant of a "similar" apartment was $511, while his was $845, but "his 1/3 share was $69.00 per month." (Am. Compl. 3 ¶¶ 6–7; Stone Lease, *id.* at 12; Renewal Lease Form for Nicole Passaro, *id.* at 10.) Not only is it unclear from these allegations how much Plaintiff and the other tenant were actually paying or how their rent was calculated, but Plaintiff provides no information on the other tenant to suggest she was similarly situated to him such as the number of rooms in each apartment, when that tenant had moved in, and whether the other tenant received a housing subsidy. Plaintiff's other allegations are similarly devoid of factual content, such as his allegations that Defendant Wiggins was "discriminatory" towards him in October 2013, (*id.* ¶ 11); that "the landlord" took the side of another white tenant in a dispute in March 2010, (*id.* ¶ 8); and that from March 2007 to March 2017, Defendants "take whites versions when a fracas occurs and I'm the victim. Ignore complaints, monitor you in [the building] and say discriminatory things. Go into [apartment] illegally or try to break in. Charge different rents based on color," (HUD Compl.). Even taken together and drawing all inferences in favor of Plaintiff, his generic, conclusory allegations of incidents that are at best sporadic, fail

16

to show "an ongoing policy of discrimination which extend[s] into the limitations period." *Favourite*, 381 F. Supp. 3d at 279; *see also Jackson v. Cnty. of Rockland,* 450 F. App'x 15, 19 (2d Cir.2011) (dismissal appropriate where "bald assertions of discrimination and retaliation" were unsupported by examples of similarly-situated individuals being treated differently); *Logan v. Matveevskii*, 175 F. Supp. 3d 209, 225 (S.D.N.Y. 2016) (dismissing an FHA claim on the ground that no inference of discrimination could be drawn from conclusory allegations of "discrimination against a black family" and allegation that defendant "called 911 over Plaintiff's presence at a meeting, where she reported that Plaintiff had a "'gang'" of people coming after her"); *Haber*, 847 F. Supp. 2d at 584 (granting summary judgment because plaintiff had not made a prima facie case of discrimination based only on conclusory assertions that the landlord's "whole attitude" suggested race discrimination and had failed to set forth any evidence that white tenants were treated differently).

Accordingly, Plaintiff has failed to allege facts giving rise to an inference of discrimination on the part of any Defendant. Because his claims under the FHA, Title VI, the NYSHRL, and the NYCHRL must be dismissed on this ground alone, I need not reach Defendants' remaining contentions.

### C. *Dismissal Without Prejudice*

Claims brought pro se typically are dismissed without prejudice. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (unless there is no indication that the pro se plaintiff will be able to assert a valid claim giving rise to subject matter jurisdiction, leave to amend should be given). "A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation

marks omitted). I see no reason to deviate from the normal practice in this case. Accordingly, Plaintiff's claims are dismissed without prejudice. However, Plaintiff is reminded to heed Judge McMahon's earlier warning that "further frivolous litigation in this Court will result in an order barring him from filing new actions *in forma pauperis* without prior permission." *See Stone v. NYDHR*, No. 18-CV-3867, ECF No. 5, at 3 (June 28, 2018).

## V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to close the motion pending at Document 15, and to close this case.

SO ORDERED.

Dated: March 30, 2020
      New York, New York

Vernon S. Broderick
United States District Judge